UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLARD T. KING, JR.,

   Plaintiff,

     v.

ERIC HIMPTON HOLDER, JR., Attorney General, *et al.*,

   Defendants.

Civil Action No. 12-319 (CKK)

MEMORANDUM OPINION
(April 24, 2013)

Plaintiff Willard T. King, Jr., filed suit against Attorney General Eric H. Holder, Jr., and Tam Mary Wyatt, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1988, arising out of the Plaintiff's employment as a Criminal Investigator/Deputy United States Marshal in Washington, D.C. The Plaintiff alleges that his former supervisor, Defendant Wyatt, discriminated against him on the basis of his race, and retaliated against the Plaintiff for filing discrimination complaints. Presently before the Court is the Defendants' [9] Motion for Partial Dismissal of Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of a motion to dismiss, the Court finds Defendant Wyatt is not a proper defendant in this action and the Plaintiff cannot recover punitive damages in connection with his Title VII claims. Furthermore, although the Plaintiff sufficiently plead a discrimination claim based on the 2010 investigation into allegations of overtime fraud by the Plaintiff, the Plaintiff

---

[1] Defs.' Mot. to Dismiss, ECF No. [9]; Pl.'s Opp'n, ECF No. [13-1]; Defs.' Reply, ECF No. [14].

failed to state a claim for a hostile work environment or unlawful retaliation based on his 2007 protected activity. Finally, the Plaintiff's common law tort claims are preempted by Title VII. Therefore, the Defendants' [9] Motion for Partial Dismissal of Complaint is GRANTED IN PART and DENIED IN PART as set forth below.

## I. BACKGROUND

The following facts are drawn from the Plaintiff's Complaint, which the Court accepts as true for purposes of deciding the Defendants' motion to dismiss. The Plaintiff is an African American male, who since 2005 has been employed as a Criminal Investigator/Deputy United States Marshal with the Capitol Area Regional Fugitive Task Force, Superior Court Warrants, in Washington, D.C. Compl., ECF No. [1], ¶ 4. The Plaintiff's duties included investigating fugitives and escorting prisoners to and from the Superior Court for the District of Columbia. *Id.* at ¶ 7.

In October 2007, Defendant Wyatt, a Supervisory Deputy U.S. Marshal, became the Plaintiff's supervisor. *Id.* at ¶ 9. The Plaintiff alleges that "[a]lmost immediately after coming under the supervision of defendant Wyatt, she began to badger the plaintiff about his attire, including his boots, his shirt, and even his facial hair." *Id.* at ¶ 10. The Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in November 2007 "alleging a continuing pattern of harassment and hostile work environment." *Id.* Without elaboration, the Plaintiff asserts that "Defendant Wyatt was made aware of plaintiff's complaint." *Id.*

At some point during December 2007, Defendant Wyatt allegedly confronted the Plaintiff about being absent from his post. Compl. ¶ 11. The Plaintiff asserts that Defendant Wyatt knew that the Plaintiff had previously received permission from the Chief U.S. Marshal to leave his

post, yet she threatened to refer the Plaintiff to Internal Affairs for being "AWOL." *Id.* Defendant Wyatt allegedly required the Plaintiff to complete a "210 field report" and a "leave slip" to account for his absence, and threatened to "get him fired" if he did not complete the forms. *Id.* Defendant Wyatt subsequently warned the Plaintiff that he should notify her personally if he ever wished to leave his post again. *Id.* at ¶ 12. "To the best of plaintiff's knowledge and belief, no other US Marshals were advised to do the same." *Id.*

Several months later, the Plaintiff submitted time sheets requesting overtime in light of his participation in week-long training that lasted thirty minutes longer than his normal tour of duty. Compl. ¶ 14. Plaintiff alleges that he was advised to check with the Training Division in order to determine if the division would authorize overtime for the additional thirty minutes each day. *Id.* at ¶ 15. The Plaintiff indicates that "since time sheets were required to be posted shortly, plaintiff was advised by the administrative officer that he could submit the time sheet now with the overtime on it," and that "if the Training Division denied his request, to so advise the Administrative officer and she would correct the time sheet." *Id.* The Plaintiff asserts that after later learning the Training Division would not approve the requested overtime, Plaintiff submitted revised time sheets. *Id.* at ¶ 16. However, Defendant Wyatt purportedly accused the Plaintiff of falsifying his initial time sheets, and referred the issue to Internal Affairs for a fraud investigation. *Id.* at ¶ 17. "To the best of plaintiffs knowledge Internal Affairs concluded the investigation with a 'no findings' determination." *Id.*

During the same time frame, Assistant Chief Deputy United States Marshal Stirling Murray (hereinafter "Assistant Chief Murray") called the Plaintiff into his office "to answer to a complaint by defendant Wyatt that plaintiff was 'not doing his job.'" Compl. ¶ 18. Assistant Chief Murray reportedly informed the plaintiff that Defendant Wyatt had made a number of

complaints about the Plaintiff. *Id.* The Plaintiff indicates that he requested that he be removed from Defendant Wyatt's supervision, but offers no further details regarding the meeting. *Id.*

The Plaintiff alleges that during a March 2008 meeting in the cell block area, Defendant Wyatt announced new rules for the deputies under her watch. Compl. ¶ 19. The Plaintiff contends that in response to his question as to whether Defendant Wyatt would send out an email memorializing the new rules, Defendant Wyatt "responded by yelling and pointing her finger in plaintiff's face," and "berated the plaintiff, in front of both prisoners and fellow marshals, insisting that she did not and would not be putting the policy in writing." *Id.* Defendant Wyatt purportedly "continued to berate plaintiff verbally with ridicule and insults before leaving the area." *Id.* The Plaintiff was subsequently removed from Defendant Wyatt's immediate supervision, but was still required to work in the cell block each morning, which was Defendant Wyatt's area of responsibility. *Id.* at ¶ 21.

In November 2008, the Plaintiff claims to have learned of a conversation between Defendant Wyatt and Deputy U.S. Marshal Lorne Stenson that purportedly took place in February 2008. Compl. ¶ 23. The Plaintiff claims that during the conversation, Defendant Wyatt told Deputy Stenson that Wyatt "was going to 'burn [plaintiff] and other niggers in the District,'" and tried to enlist Deputy Stenson's assistance in getting the Plaintiff fired. *Id.* Upon learning of the conversation, the Plaintiff contacted the U.S. Marshals Service's equal employment office. *Id.* at ¶ 25. After ninety days of counseling, the Plaintiff filed a formal complaint with the EEOC in February 2009. The Plaintiff alleges that his complaint was dismissed in July 2009, but reopened on the Plaintiff's motion in November 2009. *Id.* Without elaboration, the Plaintiff asserts that Defendant Wyatt was notified that the case was reopened in March 2010. *Id.* at ¶ 26.

The Plaintiff expected a career-ladder promotion to GS-11 in April 2010. Compl. ¶ 27. When he did not receive the promotion, the Plaintiff inquired as to the reason and learned that he did not receive the promotion because of a pending investigation by the Office of the Inspector General ("OIG"). *Id.* The Plaintiff alleges that Defendant Wyatt initiated an investigation into the Plaintiff for "cell block overtime fraud." *Id.* at ¶ 28. The Plaintiff further claims that he is "routinely denied special assignments as 'Deputy in Charge,'" and was recently "passed over for assignment as 'acting supervisor,'" in favor of a white Deputy U.S. Marshal. *Id.* at ¶29. The Plaintiff offers no further details regarding the 2010 OIG investigation, or the assignments he was purportedly denied. The Plaintiff filed suit on February 28, 2012, alleging five counts: (1) discrimination based on his race; (2) hostile work environment also based on the Plaintiff's race; (3) unlawful retaliation; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated

by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

The Defendants move to dismiss various portions of the Complaint, citing a number of "procedural" and substantive shortcomings. The Court begins with the Defendants' suggestion that Defendant Wyatt is not a proper defendant in this case, before turning to the question of whether the Plaintiff can recover punitive damages in connection with his Title VII claims. Next, the Court considers whether the Plaintiff has sufficiently plead claims of discrimination, hostile work environment, and retaliation under Title VII. Finally, the Court addresses the Defendants' contention that the Plaintiff's common law tort claims are preempted by Title VII.

### A. *Defendant Wyatt Is Not a Proper Defendant under Title VII*

Initially, the Defendants move to dismiss all claims against Defendant Tam Wyatt, asserting Wyatt is not a proper defendant. With respect to his Title VII claims, the Plaintiff concedes that Wyatt is not a proper defendant. Pl.'s Opp'n at 1 ("Defendant is correct in that Ms. Wyatt cannot be held liable under Title VII."). Because Wyatt cannot be held liable in her personal capacity for any purported violation of Title VII, the Plaintiff's Title VII claim against Wyatt "essentially merges with [his] claim against [Defendant Holder]." *Gary v. Long*, 59 F.3d 1392, 1399 (D.C. Cir. 1995). Furthermore, as set forth *infra*, the Plaintiff's negligent and intentional infliction of emotional distress claims as currently plead are preempted by Title VII. Therefore, the Court shall dismiss Counts I, II, and III with prejudice and Counts IV and V without prejudice as to Defendant Wyatt.

> B. *Plaintiff Cannot Recover Punitive Damages in Connection with His Title VII Claims*

Second, the Defendants argue that the Complaint improperly requests punitive damages in connection with the Plaintiff's Title VII claims. In response, the Plaintiff notes that punitive damages are generally recoverable under Title VII. Pl.'s Opp'n at 1 (citing *Geren v. Tecom, Inc.*, 566 F.3d 1037 (Fed. Cir. 2009)). The Civil Rights Act of 1991 provides that a party "may recover compensatory and punitive damages as allowed in subsection (b)," for violations of Title VII. 42 U.S.C. § 1981a(a)(1). However, subsection (b) expressly precludes an award of punitive damages against "a government, government agency or political subdivision." *Id.* § 1981a(b)(1). The Plaintiff brings his Title VII claims against Eric Holder in his official capacity as the Attorney General of the United States, head of the Department of Justice. Therefore, the Plaintiff cannot recover punitive damages in connection with Counts I, II, or III of the Complaint.

> C. *Plaintiff Has Stated a Claim for Discrimination in Connection with the 2010 OIG Investigation*

Count I of the Complaint alleges the Defendants discriminated against him on the basis of his race. "[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The Defendants suggest—and the Plaintiff does not dispute—that the Complaint identifies six purported adverse employment actions: (1) Defendant Wyatt requiring the Plaintiff to notify her if he wanted to leave his post; (2) Defendant Wyatt reporting the Plaintiff to Internal Affairs for allegedly falsifying his timesheet; (3) Defendant Wyatt complaining to Assistant Chief Murray regarding the Plaintiff's job performance; (4) Defendant Wyatt's verbal altercation with the Plaintiff during the meeting in the cell block; (5) Defendant

Wyatt's purported racially derogatory statements to Deputy Stenson regarding the Plaintiff; and (6) Defendant Wyatt initiating an OIG investigation into the Plaintiff in 2010.  The Defendants move to dismiss Count I on two grounds: first, that allegations one through five do not constitute adverse employment actions, and second, that the complaint does not sufficiently allege that the sixth purported adverse actions were motivated by the Plaintiff's race.

Curiously, the Plaintiff does not respond to the Defendants' initial argument that five of the incidents identified by the Plaintiff do not constitute adverse employment actions.  Rather, the Plaintiff argues only that "there are a number of facts that support the strong possibility that discrimination sole[ly] on the basis of race was at work in this case."  Pl.'s Opp'n at 4. Accordingly, the Court treats as conceded the Defendants' argument that the only allegation that qualifies as an adverse employment action is the 2010 OIG investigation that delayed the Plaintiff's career-ladder promotion.  *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

The only issue remaining with respect to Count I of the Complaint is whether the Plaintiff has adequately plead facts supporting the claim that the 2010 OIG investigation was initiated by Defendant Wyatt because of the Plaintiff's race.  The Defendants argue that the Plaintiff has not sufficiently alleged a connection to his race because he has not suggested that other employees were treated differently, that is, received career-ladder promotions while under investigation. The Defendants' argument misses the mark.  The Plaintiff does not allege that *OIG* discriminated against the Plaintiff by denying him a promotion on the basis of his race.  Rather, the Plaintiff claims that *Defendant Wyatt* discriminated against the Plaintiff on the basis of his race by

initiating an (allegedly) unwarranted investigation, which ultimately resulted in the Plaintiff being denied a career-ladder promotion. The Court agrees with the Plaintiff that the alleged racial slurs used by Defendant Wyatt are sufficient to plead a causal link between the Plaintiff's race and Defendant Wyatt initiating the investigation for purposes of the present motion to dismiss. Therefore, the Defendants' motion to dismiss Count I is granted as to all adverse actions except for the 2010 OIG investigation, and otherwise denied.

### D. *Plaintiff Failed To State a Hostile Work Environment Claim*

Count II of the Complaint alleges the Defendants subjected the Plaintiff to a hostile work environment. A plaintiff may sustain a claim for a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). The Defendants allege that the Plaintiff has failed to state a claim in that Defendant Wyatt's conduct was not sufficiently severe or pervasive to legally constitute a hostile work environment.

The entirety of the Plaintiff's response is as follows:

> Next the defendants contend that Count II should be dismissed because "Wyatt did not engage in harassing conduct that was severe and pervasive". The problem with that argument is that it flies in the face of known facts concerning defendant Wyatt, including her USMS discipline for "Conduct Unbecoming an Officer" wherein the allegations concerning her race-motivated behavior were found to be true. These and other damning facts will most certainly come to light during the discovery phase of this matter.

Pl.'s Opp'n at 3-4. The Plaintiff simply fails to respond to the Defendants' legal contention. Moreover, to the extent the Plaintiff's argument can be considered responsive, it relies on allegations regarding Defendant Wyatt that do not appear in the Complaint. The Plaintiff cannot amend his Complaint by including new allegations in his Opposition to the Defendants' motion.

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F.Supp.2d 165, 170 (D.D.C. 2003). Accordingly, the Court shall grant the Defendants' motion to dismiss Count II as conceded. *Hopkins*, 284 F.Supp.2d at 25.

### E. *Plaintiff Failed to State a Claim for Unlawful Retaliation*

Count III of the Complaint alleges the Defendants retaliated against the Plaintiff for filing complaints of discrimination and of a hostile work environment. To state a claim for unlawful retaliation, the Plaintiff must show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). The Defendants allege the Plaintiff failed to state a claim of unlawful retaliation for the Plaintiff's 2007 EEOC complaint against Defendant Wyatt because (1) the Plaintiff failed to identify any materially adverse action taken after his 2007 protected activity; (2) the Plaintiff failed to plead a causal link between any adverse action and his protected activity; and (3) the Plaintiff cannot rebut the Defendants' legitimate, non-discriminatory reason for any purported adverse action. The Court agrees that the Plaintiff failed to allege the Defendants took any materially adverse action in retaliation for the Plaintiff's 2007 protected activity therefore the Court need not reach the Defendants' second and third arguments.

"[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted); *see also id.* at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). Reading the Complaint in the light most favorable to the Plaintiff, the Plaintiff

identifies four alleged adverse actions, which the Court addresses in turn.

First, the Plaintiff alleges that in December 2007, Defendant Wyatt confronted the Plaintiff about being absent from his post, and subsequently required the Plaintiff to notify her if he left his post again. "Such minor inconveniences and alteration of job responsibilities [do] not rise to the level of adverse action necessary to support a claim." *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (citation omitted) (finding requirement that plaintiff submit biweekly reports on the status of her work was not a materially adverse action for purposes of a retaliation claim).

Second, the Plaintiff asserts that in February 2008, he was called to Assistant Chief Murray's office in light of complaints from Defendant Wyatt that the Plaintiff was "not doing his job." The Plaintiff offers not further detail as to the nature of the meeting, or the effects thereof. To the extent the meeting can be construed as a performance evaluation, "[i]n order for a performance evaluation to be materially adverse, it must affect the employee's position, grade level, salary, or promotion opportunities." *Taylor*, 571 F.3d at 1321; *accord Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010). Absent any allegations that the meeting with Assistant Chief Murray affected his position, grade level, salary, or promotion activities, the meeting—or Defendant Wyatt's complaints about the Plaintiff—does not constitute a material adverse action.

Third, the Plaintiff asserts that in February 2008, Defendant Wyatt accused the Plaintiff of falsifying his timesheets, and referred the issue to Internal Affairs for investigation. "[T]he request for an investigation by an independent body (as opposed to the disciplinary action that may follow) does not constitute an actionable adverse employment action." *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004). The Plaintiff asserts that the investigation concluded with a "no findings" determination. Compl. ¶ 17. The Plaintiff does not claim to have suffered any

injury or harm during or as a result of the investigation. *Burlington N.*, 548 U.S. at 67. Therefore the February 2008 investigation does not constitute a materially adverse action for purposes of this motion.

Fourth, the Plaintiff claims that in March 2008, Defendant Wyatt berated Plaintiff in front of other Deputy U.S. Marshals and prisoners in response to a question regarding new cell block procedures. "The Supreme Court, [] has emphasized that sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims." *Baloch*, 550 F.3d at 1199 (holding supervisor's incidents of "profanity-laden yelling" did not constitute "actionable adverse actions"). A single verbal altercation between Defendant Wyatt and the Plaintiff is not an adverse action for purposes of the Plaintiff's retaliation claim.

In sum, none of the four adverse actions Defendant Wyatt purportedly took against the Plaintiff after his 2007 protected activity constitute "material" adverse actions for purposes of a Title VII retaliation claim. Accordingly, the Court shall dismiss without prejudice Count III with respect to the Plaintiff's 2007 protected activity.

## F. *Plaintiff's Common Law Tort Claims Are Preempted*

Finally, the Defendants move to dismiss the Plaintiff's claims for negligent and intentional infliction of emotional distress, Counts IV and V respectively, on the grounds these claims are pre-empted by the Plaintiff's Title VII claims. Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). This includes both constitutional claims and common law tort claims arising out of the same conduct that forms the basis for a plaintiff's Title VII claim. *Ramey v. Bowsher*, 915 F.2d 731, 734 (D.C. Cir. 1990) ("[T]o the extent that Ramey attempts to recast his tort claims against the supervisors as pure discrimination claims, they are in any event

barred by the exclusive character of the Title VII remedy."); *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) ("The Title VII remedy declared exclusive for federal employees in *Brown v. GSA* precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation."); *see also Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004) (dismissing negligent and intentional infliction of emotional distress claims as preempted by Title VII). The Plaintiff's only response to the Defendant's motion on this issue was to say that Counts IV and V "may or may not be" preempted by Title VII, but that "it is far too early to tell." Pl.'s Opp'n at 5. The Plaintiff cannot avoid a motion to dismiss for failure to state a claim simply by asserting discovery might reveal facts sufficient to state a claim. On its face, the Complaint does not provide an independent basis for the Plaintiff's tort claims apart from the Defendants' purportedly discriminatory conduct. Accordingly, the Court shall dismiss Counts IV and V without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the Complaint in large part fails to state a claim for relief. As a matter of law, Defendant Wyatt is not a proper defendant under Title VII, and the Plaintiff cannot recover punitive damages for his Title VII claims brought against a government agency. The Plaintiff stated a claim for racial discrimination arising out of the 2010 OIG investigation into the Plaintiff, but the Plaintiff conceded that none of his other allegations constitute adverse employment actions. The Plaintiff's hostile work environment claim shall be dismissed because the Plaintiff failed to respond to the Defendants' contentions as to why Defendant Wyatt's behavior was not severe or pervasive. The Plaintiff also failed to sufficiently state an adverse action as required for a retaliation claim based on his 2007 protected activity. Finally, as currently pled the Plaintiff's common law tort claims are preempted by Title VII.

Accordingly, the Defendants' [9] Motion for Partial Dismissal of Complaint is GRANTED IN PART and DENIED IN PART.

An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
