# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLARD T. KING, JR.,

    Plaintiff,

       v.

ERIC HIMPTON HOLDER, JR., *et al.*,

    Defendants.

**Civil Action No. 12-319 (CKK)**

## MEMORANDUM OPINION
(June 20, 2013)

Plaintiff Willard T. King, Jr., filed suit against Attorney General Eric H. Holder, Jr., and Tam Mary Wyatt, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1988, arising out of the Plaintiff's employment as a Criminal Investigator/Deputy United States Marshal in Washington, D.C.   The Plaintiff alleges that his former supervisor, Defendant Wyatt, discriminated against him on the basis of his race, and retaliated against the Plaintiff for filing discrimination complaints.  The Court previously granted in part the Defendants' partial motion to dismiss, dismissing portions of the Plaintiff's racial discrimination and retaliation claims, and dismissing the Plaintiff's hostile work environment and common law tort claims in full. Presently before the Court is the Plaintiff's [25] Motion for Leave to File Amended Complaint, and the Defendants' [27] Motion to Dismiss Amended Complaint.  Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff may file his amended complaint, but the amended allegations fail to remedy the flaws in the initial complaint that led the Court to grant the Defendants' partial motion to dismiss.

Accordingly, the Plaintiff's motion for leave to file is GRANTED and the Defendants' partial motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

*A.     Factual Allegations*

The following facts are drawn from the Plaintiff's Amended Complaint, which the Court accepts as true for purposes of deciding the Defendants' motion to dismiss. The Plaintiff is an African American male, who since 2005 has been employed as a Criminal Investigator/Deputy United States Marshal with the Capitol Area Regional Fugitive Task Force, Superior Court Warrants, in Washington, D.C.   Am. Compl., ECF No. [25-1], ¶ 4, 7. The Plaintiff's duties include investigating fugitives and escorting prisoners to and from the Superior Court for the District of Columbia.  *Id*. at ¶ 7.

In October 2007, Defendant Wyatt, a Supervisory Deputy U.S. Marshal, became the Plaintiff's supervisor.   Am. Compl. ¶ 9.   Of the ten individuals under Defendant Wyatt's supervision, the Plaintiff was the only African American.  *Id.*  The Plaintiff alleges that "[a]lmost immediately after Wyatt became his supervisor, she began to badger the plaintiff about his attire, including his boots, his shirt, and even his facial hair."  *Id*. at ¶ 10.   The Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in November 2007 alleging "a continuing pattern of harassment and hostile work environment."  *Id.*   Without elaboration, the Plaintiff asserts that "[v]ery shortly thereafter Wyatt was made aware of the complaint."  *Id.*

At some point during December 2007, the Plaintiff received permission for the Chief Deputy U.S. Marshal to drive a fellow Deputy U.S. Marshal to the airport while the Plaintiff was on duty.   Am. Compl. ¶ 11.   Defendant Wyatt allegedly confronted the Plaintiff about being

absent from his post, although the Defendant Wyatt purportedly knew that the Plaintiff had received permission to do so. *Id.* Defendant Wyatt allegedly threatened to refer the Plaintiff to Internal Affairs for being "AWOL," and required the Plaintiff to complete a "210 field report" and a "leave slip" to account for his absence. *Id.* The Plaintiff asserts that Defendant Wyatt threatened to "get him fired" if he did not complete the forms. *Id.* Defendant Wyatt subsequently warned the Plaintiff that he should notify her personally if he ever wished to leave his post again, stating that "I want to know where you are at all times." *Id.* at ¶ 12. "To the best of Plaintiff's knowledge and belief, no other US Marshal under Wyatt's supervision was advised to do the same." *Id.*

On or about January 9, 2008, during a meeting in the cell block of the courthouse, Defendant Wyatt announced new rules for the deputies under her watch. Am. Compl. ¶ 13. The Plaintiff contends that in response to his question as to whether Defendant Wyatt would put the new rules into writing, Defendant Wyatt "responded in a loud and hostile voice berating the Plaintiff and pointing her finger in his face, in front of both prisoners and fellow marshals." *Id.* Defendant Wyatt purportedly "continued to berate plaintiff verbally with ridicule and insults before leaving the area." *Id.*

In February 2008, the Plaintiff submitted time sheets requesting overtime in light of his participation in week-long training that lasted thirty minutes longer than his normal tour of duty. Am. Compl. ¶ 14. Plaintiff alleges that he was advised to check with the Training Division to determine if the division would authorize overtime for the additional thirty minutes each day. *Id.* at ¶ 15. The Plaintiff indicates that "since time sheets were required to be posted that same day," Plaintiff was advised "by the administrative officer that he could submit the time sheet now with the overtime on it," and that "if the Training Division denied his request, to so advise the

Administrative officer and she would correct the time sheet." *Id*. The Plaintiff asserts that after later learning the Training Division would not approve the requested overtime, Plaintiff submitted revised time sheets. *Id*. at ¶ 16. Defendant Wyatt, purportedly knowing "these facts," accused the Plaintiff of falsifying his initial time sheets, and referred the issue to Internal Affairs for a fraud investigation. *Id*. at ¶ 17. "To the best of Plaintiffs knowledge Internal Affairs concluded the investigation with a 'no findings' determination." *Id*.

During the same month, Assistant Chief Deputy United States Marshal Stirling Murray (hereinafter "Assistant Chief Murray") called the Plaintiff into his office "to answer to a complaint by Wyatt that Plaintiff was 'not doing his job.'" Am. Compl. ¶ 18. The Plaintiff indicates that during the meeting he requested that he be removed from Defendant Wyatt's supervision, and advised Assistant Chief Murray "that he would be filing a formal complaint about Wyatt's behavior." *Id*. "Upon information and belief, Wyatt was made aware of Plaintiff's complaints about her to [Assistant Chief] Murray." *Id*. The Plaintiff was subsequently removed from Defendant Wyatt's immediate supervision, but was still required to work in the cell block each morning, which was Defendant Wyatt's area of responsibility. *Id*. at ¶ 19.

In November 2008, the Plaintiff claims to have learned of a conversation between Defendant Wyatt and Deputy U.S. Marshal Lorne Stenson that purportedly took place in February 2008. Am. Compl. ¶ 20. The Plaintiff claims that during the conversation, Defendant Wyatt told Deputy Stenson that Wyatt "was going to 'burn [Plaintiff] and other niggers in the District,'" and tried to enlist Deputy Stenson's assistance in getting the Plaintiff fired. *Id*. Upon learning of the conversation, the Plaintiff contacted the U.S. Marshals Service's equal employment office. *Id*. at ¶ 22. The Plaintiff eventually filed a formal complaint with the Equal

Employment Opportunity Commission.[1]   *Id.*   The Plaintiff alleges that his complaint was dismissed in July 2009, but reopened on the Plaintiff's motion in November 2009.  *Id.*  Without elaboration, the Plaintiff asserts that Defendant Wyatt was notified that the case was reopened in March 2010.  *Id.* at ¶ 23.

The Plaintiff expected a career-ladder promotion to GS-11 in April 2010.  Am. Compl. ¶ 24.  When he did not receive the promotion, the Plaintiff inquired as to the reason and learned that he did not receive the promotion because of a pending investigation by the Office of the Inspector General ("OIG").   *Id.*   The Plaintiff alleges that Defendant Wyatt initiated an investigation into the Plaintiff for cell block overtime fraud.  *Id.* at ¶ 25.  The Plaintiff further claims that he is "routinely denied special assignments as 'Deputy in Charge,'" and was recently "passed over for assignment as 'acting supervisor,'" in favor of a white Deputy U.S. Marshal. *Id.* at ¶ 27.  The Plaintiff offers no further details regarding the 2010 OIG investigation, or the assignments he was purportedly denied, except to say that Acting Chief Deputy U.S. Marshal Terry Fred and Acting Marshal Benjamin Kates "put the investigation request forward" after Defendant Wyatt informed them of the purported overtime fraud.  *Id.* at ¶ 25.

B.   *Procedural History*

The Plaintiff filed suit on February 28, 2012, alleging five counts: (1) discrimination based on his race; (2) hostile work environment also based on the Plaintiff's race; (3) unlawful retaliation; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.  *See generally* Compl., ECF No. [1].  The Defendants moved to dismiss portions of the Complaint, and the Court granted the motion as conceded when the Plaintiff

---

[1]   The Plaintiff's Amended Complaint does not indicate when the Plaintiff filed his complaint with the EEOC.

failed to file an opposition.  *See* Vacated Order (8/11/12) ECF No. [10].  Over three weeks later, the Plaintiff moved to vacate the Court's Order and for leave to file an opposition to the motion to dismiss, which the Court granted   9/6/12 Minute Order.   After the parties briefed the Defendants' motion, the Court granted Defendants' partial motion to dismiss, leaving only the Plaintiff's discrimination claim based on the 2010 OIG investigation in Count I, and Count III as to retaliation based on protected activity after 2007.

During the Initial Scheduling Conference on May 14, 2013, the Plaintiff advised the Court that he intended to file a motion for leave to file an amended complaint.  The Court set a briefing schedule for the Plaintiff's motion, and the Defendants' anticipated motion to dismiss. Sched. & P. Order, ECF No. [20], at 5.  The Plaintiff timely filed his motion for leave to file, and the Defendants likewise filed their motion to dismiss in accordance with the schedule set by the Court.  However, the Plaintiff failed to file an opposition to the Defendants' motion to dismiss. As of the date of this Memorandum Opinion, the Plaintiff has yet to seek an extension of time or otherwise attempt to remedy his failure to comply with the Court's scheduling Order.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

The Plaintiff moves pursuant to Federal Rule of Civil Procedure 15 for leave to file an amended complaint. Rule 15(a)(2) provides that the Court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court ultimately finds that some of the claims in the Amended Complaint must be dismissed, but the Plaintiff's proposed amendments are not futile. The Plaintiff's proposed Amended Complaint revises the timeline of events and provides new factual allegations potentially relevant to the Plaintiff's surviving claims. Accordingly, the Plaintiff's motion for leave to file an amended complaint is granted, and the Court turns to the Defendants' motion to dismiss as it relates to each count of the Amended Complaint.

### A.     *Count I: Discrimination Based on the Plaintiff's Race*

Count I of the Amended Complaint alleges the Defendants discriminated against him on the basis of his race. "[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The Amended Complaint identifies six purported adverse employment actions: (1) Defendant Wyatt requiring the Plaintiff to notify her if he wanted to leave his post; (2) Defendant Wyatt's verbal altercation with the Plaintiff during the meeting in the cell block; (3) Defendant Wyatt reporting the Plaintiff to Internal Affairs for allegedly falsifying his timesheet in February 2008; (4) Defendant Wyatt complaining to

Assistant Chief Murray regarding the Plaintiff's job performance; (5) Defendant Wyatt's purported racially derogatory statements to Deputy Stenson regarding the Plaintiff; and (6) Defendant Wyatt initiating an OIG investigation into the Plaintiff in 2010.  The Defendants argue that the first five incidents are not adverse employment actions for purposes of Title VII, and that the Plaintiff failed to sufficiently allege that the sixth action was motivated by the Plaintiff's race.  Defs.' Mot. at 4-5.

When a Title VII plaintiff rests a claim of materially adverse action on an employment action that does not involve loss of pay or benefits, the relevant question is whether the employment action resulted in "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012) (citation omitted).  With respect to the first five incidents, the Plaintiff once again fails to offer any explanation as to how these actions were materially adverse.  Nor does the Amended Complaint add any substantive allegations to demonstrate any of these incidents were "materially adverse."

With respect to the 2010 OIG investigation, the Court initially held that "the alleged racial slurs used by Defendant Wyatt are sufficient to plead a causal link between the Plaintiff's race and Defendant Wyatt initiating the investigation" for purposes of a motion to dismiss. 4/24/13 Mem. Op at 9.  The Defendants argue that "[i]n order for the Court to properly consider this alleged incident, Plaintiff would need to provide declarations that elevate the accusation above the level of mere hearsay."  Defs.' Mot. at 5; *see also id.* ("Plaintiff has not produced any of the findings of the OIG report as exhibits to corroborate his suggestion that it was frivolous in nature and reflective of racial animus. Because such documents are indispensable to Plaintiff

crafting a valid allegation of wrongdoing, the absence of such materials renders the accusation facially insufficient."). The Plaintiff has no such obligation at this stage in the proceedings; the Plaintiff need only provide "*[f]actual allegations* . . . enough to raise a right to relief above the speculative level, *on the assumption that all the allegations in the complaint are true* (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (emphasis added). The Plaintiff has alleged that Defendant Wyatt used racial slurs in reference to the Plaintiff, and referred the Plaintiff to OIG for an investigation into allegations Wyatt knew were false, which prevented the Plaintiff from receiving a promotion. Taking these allegations as true—as the Court must even absent documentation—the Amended Complaint states a claim racial discrimination based on Defendant Wyatt initiating the 2010 OIG investigation into the Plaintiff.

> **B.      Count II: Hostile Work Environment**

Count II of the Amended Complaint alleges the Defendants subjected the Plaintiff to a hostile work environment. A plaintiff may sustain a claim for a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). The Defendants argue Count II should be dismissed for two reasons: (1) Defendant Wyatt's use of racial slurs is hearsay; and (2) the incidents alleged in the Amended Complaint "hardly rise to the 'severe or pervasive' standard required for a hostile work environment claim." Defs.' Mot. at 6. The Defendants offer no legal authority for the proposition that second-hand statements cannot contribute to a hostile work environment. Regardless, the Plaintiff once again fails to respond to the Defendants' contention that the Amended Complaint does not allege "severe or pervasive" conduct sufficient to demonstrate a hostile work environment.

C.      *Count III: Unlawful Retaliation*

Count III of the Amended Complaint alleges in relevant part:

> In November 2007 the Plaintiff filed an EEOC complaint against Wyatt, alleging
> a continuing pattern of harassment and hostile work environment.  From that time
> up through 2013, Plaintiff was subjected to a continuing pattern of humiliation,
> harassment, derogatory names and racial epithets and finally, false charges being
> referred to Internal Affairs and to OIG twice, all in retalistion [sic] for the
> Plaintiff's protected activitbetween [sic] 2008 and 2013[.]

Am. Compl. ¶¶ 48-49.   .   To state a claim for unlawful retaliation, the Plaintiff must show

"(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse

action by his employer; and (3) that a causal link connects the two."   *Jones v. Bernanke*, 557

F.3d 670, 677 (D.C. Cir. 2009).   The Defendants move to dismiss Count III to the extent it is

based on purported retaliation in response to the Plaintiff's 2007 protected activity only.  Defs.'

Mot. at 7 ("Plaintiff cannot establish that Wyatt's actions following his 2007 EEO activity were

materially adverse or that, if materially adverse, the actions were motivated by retaliatory

reasons.").

It is unclear from the Amended Complaint whether the Plaintiff in fact claims he suffered

retaliation in response to his 2007 protected activity.  Although paragraph 48 references the fact

that the Plaintiff filed an EEOC complaint against Defendant Wyatt in November 2007, the next

paragraph asserts that the Defendant was subjected to a variety of conduct in retaliation "for the

Plaintiff's protected activit[y] between *2008* and 2013."   Am. Compl. ¶¶ 48, 49 (emphasis

added).   In any event, the Amended Complaint fails to allege that any of the actions taken by

Defendant Wyatt following the Plaintiff's 2007 protected activity are materially adverse as

required to state a claim for unlawful retaliation.

"[A] plaintiff must show that a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a reasonable

10

worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted); *see also id.* at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). The Amended Complaint identifies four potential retaliatory adverse actions with respect to the Plaintiff's November 2007 protected activity, which the Court addresses in turn.

First, the Plaintiff alleges that in December 2007, Defendant Wyatt confronted the Plaintiff about being absent from his post, and subsequently required the Plaintiff to notify her if he left his post again. Am. Compl. ¶¶ 11-12. "Such minor inconveniences and alteration of job responsibilities [do] not rise to the level of adverse action necessary to support a claim." *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (citation omitted) (finding requirement that plaintiff submit biweekly reports on the status of her work was not a materially adverse action for purposes of a retaliation claim).

Second, the Plaintiff claims that in January 2008, Defendant Wyatt berated Plaintiff in front of other Deputy U.S. Marshals and prisoners in response to a question regarding new cell block procedures. Am. Compl. ¶ 13. "The Supreme Court, [] has emphasized that sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims." *Baloch*, 550 F.3d at 1199 (holding supervisor's incidents of "profanity-laden yelling" did not constitute "actionable adverse actions"). A single verbal altercation between Defendant Wyatt and the Plaintiff is not an adverse action for purposes of the Plaintiff's retaliation claim.

Third, the Plaintiff asserts that in February 2008, Defendant Wyatt accused the Plaintiff of falsifying his timesheets, and referred the issue to Internal Affairs for investigation. Am. Compl. ¶¶ 14-17. "[T]he request for an investigation by an independent body (as opposed to the

disciplinary action that may follow) does not constitute an actionable adverse employment action." *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004). The Plaintiff asserts that the investigation concluded with a "no findings" determination, Am. Compl. ¶ 17, but does not claim to have suffered any injury or harm during or as a result of the investigation. *Burlington N.*, 548 U.S. at 67. Therefore the February 2008 investigation does not constitute a materially adverse action for purposes of this motion.

Fourth, the Plaintiff asserts that in February 2008, he was called to Assistant Chief Murray's office in light of complaints from Defendant Wyatt that the Plaintiff was "not doing his job." Am. Compl. ¶ 18. The Plaintiff indicates that during the meeting he asked to be removed from Defendant Wyatt's supervision and indicated he would be filing a complaint, but offers not further detail as to the nature of the meeting, or the effects thereof. *See id.* To the extent the meeting can be construed as a performance evaluation, "[i]n order for a performance evaluation to be materially adverse, it must affect the employee's position, grade level, salary, or promotion opportunities." *Taylor*, 571 F.3d at 1321; *accord Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010). Absent any allegations that the meeting with Assistant Chief Murray affected his position, grade level, salary, or promotion activities, the meeting—or Defendant Wyatt's complaints about the Plaintiff—does not constitute a material adverse action.

In sum, none of the four adverse actions Defendant Wyatt purportedly took against the Plaintiff after his 2007 protected activity constitute "material" adverse actions for purposes of a Title VII retaliation claim. Accordingly, the Court shall dismiss without prejudice Count III with respect to the Plaintiff's 2007 protected activity.

> D.      *Counts IV & V: Intentional and Negligent Infliction of Emotional Distress*

Counts IV and V of the Amended Complaint assert common law claims for intentional

infliction of emotional distress and negligent infliction of emotional distress.  Am. Compl. ¶¶ 51-56.  Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976).  This includes common law tort claims arising out of the same conduct that forms the basis for a plaintiff's Title VII claim.  *Ramey v. Bowsher*, 915 F.2d 731, 734 (D.C. Cir. 1990).  The Court previously dismissed Counts IV and V in their entirety because "[o]n its face, the Complaint does not provide an independent basis for the Plaintiff's tort claims apart from the Defendants' purportedly discriminatory conduct."  4/24/13 Mem. Op. at 13.  The Amended Complaint suffers from the same flaw: the Plaintiff's common law tort claims are based on the exact same conduct as the Plaintiff's Title VII claims, thus the common law claims are pre-empted.  The Plaintiff did not provide any new or additional facts to support an independent claim for intentional or negligent infliction of emotional distress. Accordingly, the Court shall dismiss Counts IV and V.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff may file his Amended Complaint, but the revised allegations fail to state a claim for relief in many respects.  The Plaintiff has stated a claim for racial discrimination based on Defendant Wyatt initiating an OIG investigation into the Plaintiff in 2010, but the Plaintiff failed to plead sufficient facts to show the remaining allegations underlying Count I of the Amended Complaint are materially adverse.  Likewise, the Plaintiff fails to sufficiently allege the conduct underlying the Plaintiff's hostile work environment claim is severe or pervasive.  The Defendants do not challenge the adequacy of the allegations in support of the Plaintiff's retaliation claim as it relates to the Plaintiffs protected activity in 2008, but the Court agrees that the Amended Complaint does not allege facts sufficient to state a claim for retaliation based on the Plaintiff's November 2007 protected

activity.   Finally, the Amended Complaint fails to provide an independent factual basis for his common law tort claims, therefore the common law claims are pre-empted by Title VII in this context.    Accordingly, Plaintiff's [25] Motion for Leave to File Amended Complaint is GRANTED, and the Defendants' [27] Motion to Dismiss Amended Complaint is GRANTED IN PART and DENIED IN PART.   An appropriate Order accompanies this Memorandum Opinion.

_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE