# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLARD T. KING, JR.,

    Plaintiff,

       v.

ERIC HIMPTON HOLDER, JR., *et al.*,

    Defendants.

**Civil Action No. 12-319 (CKK)**

## MEMORANDUM OPINION
(January 7, 2015)

Plaintiff Willard T. King, Jr., filed suit against Attorney General Eric H. Holder, Jr., and Tam Mary Wyatt, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1988, arising out of Plaintiff's employment as a Criminal Investigator/Deputy United States Marshal in Washington, D.C.  Plaintiff alleges that his former supervisor, Defendant Wyatt, discriminated against him on the basis of his race, and retaliated against him for filing discrimination complaints.  The Court previously granted in part Defendants' partial motion to dismiss, dismissing portions of Plaintiff's racial discrimination and retaliation claims, and dismissing Plaintiff's hostile work environment and common law tort claims in full.  Plaintiff subsequently filed an Amended Complaint and Defendants filed a motion to dismiss the Amended Complaint. The Court dismissed the majority of Plaintiff's claims leaving only Plaintiff's racial discrimination claim based on Defendant Wyatt initiating an Office of the Inspector General investigation into Plaintiff in 2010 and Plaintiff's retaliation claim as it relates to Plaintiff's protected activity in 2008.  Presently before the Court is Defendants' [43] Motion for Summary

Judgment.  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that Plaintiff has raised a genuine issue of material fact as to his discrimination claim, but failed to produce sufficient evidence for a reasonable jury to find that Defendants retaliated against Plaintiff.  Accordingly, Defendants' Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

# I.  BACKGROUND

## A.    Factual Allegations

The following facts are drawn from Defendants' Statement of Material Facts as to which there is No Genuine Dispute.  Plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1) and Local Civil Rule 7(h) and provide a "statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." LCvR 7(h)(1).  Accordingly, the Court will cite to Defendants' Statement of Material Facts, but nevertheless note if Plaintiff disputes any of Defendants' factual allegations in his Opposition to Defendants' Motion for Summary Judgment.

Plaintiff is an African American male who, since 2005, has been employed as a Criminal Investigator/Deputy United States Marshal assigned to the District of Columbia Superior Court in Washington, D.C.  Defs.' Stmt., ECF No. [43-2], ¶¶ 1, 2; Am. Compl., ECF No. [31], ¶¶ 4, 7. In October 2007, Defendant Wyatt, a Supervisory Deputy U.S. Marshal, became Plaintiff's supervisor.  Defs.' Stmt. ¶ 3.  On March 6, 2008, the U.S. Marshals Service Office of Inspection, Internal Affairs ("IA") received an allegation from Wyatt that Plaintiff "submitted time and

---

[1]  Defendants' Motion for Summary Judgment ("Defs.' Mot."), ECF No. [43]; Defendants' Statement of Material Facts ("Defs.' Stmt."), ECF No. [43-2]; Plaintiff's Opposition to Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. [45]; Defendants' Reply in Support of Motion for Summary Judgment ("Defs.' Reply"), ECF No. [46].

attendance records inconsistent with District of Columbia Superior Court attendance records." *Id.* ¶ 6.  On March 12, 2008, this allegation was referred to the Department of Justice's Office of Inspector General ("OIG").  *Id.* ¶ 7.  OIG declined to investigate Wyatt's misconduct allegation and referred the allegation to IA for investigation.  *Id.*  On May 5, 2008, Chief Inspector Stanley Griscavage determined that the allegations against Plaintiff were unsubstantiated based on a review of the investigative file evidence and issued a letter of closure.  *Id.* ¶ 8.

In November 2008, Plaintiff claims to have learned of a conversation between Defendant Wyatt and Deputy U.S. Marshal Lorne Stenson that purportedly took place in February 2008 in which Defendant Wyatt made discriminatory remarks.  *Id.* ¶ 9; Am. Compl. ¶ 20.  Upon learning of the conversation, Plaintiff contacted the U.S. Marshals Service's Equal Employment Opportunity ("EEO") office.  Defs.' Stmt. ¶ 9.  On November 25, 2008, Plaintiff filed a formal EEO complaint.  *Id.*  Plaintiff's complaint was dismissed, but Plaintiff was granted an appeal to reopen the complaint in November 2009.  *Id*. ¶ 10.

According to Defendants, on April 1, 2009, the U.S. Marshals Service's Office of Compliance Review sent formal notification to the District of Columbia Superior Court regarding its Compliance Review scheduled for May 4, 2009.  *Id.* ¶ 12.  As part of the pre-review process, premium pay records, including overtime records, were queried.  *Id.* ¶ 13.  The queried pay records indicated an "unusually high amount of overtime paid" at the District of Columbia Superior Court.  *Id.*  Upon further review, the pay records indicated that overtime paid to Plaintiff exceeded other deputies from fiscal year 2007 to 2009.  *Id.* ¶ 14.  According to Defendants, on April 13, 2009, IA "used this pre-review material as the basis to open an investigation of King" and "to refer the investigation to the DOJ OIG."  *Id.* ¶ 15.  Defendants note that Wyatt's March 6, 2008, complaint was among the documents reviewed by OIG.  *Id*. ¶ 17.  On August 20, 2009,

DOJ OIG opened an investigation of Plaintiff.  *Id.* ¶ 16.[2]

Both parties appear to agree that as a result of the OIG investigation ongoing in 2010, Plaintiff's career-ladder promotion to GS-11, which Plaintiff expected to receive in April 2010, was "held up."  Pl.'s Opp'n at 4; *see also* Defs.' Stmt. ¶¶ 21-23; Am. Compl. ¶ 24.  Plaintiff filed an EEOC complaint on August 30, 2010 alleging that Wyatt initiated the OIG investigation to prevent Plaintiff from receiving a promotion to GS-11.  Defs.' Stmt. ¶ 24.

### B.    Procedural History

Plaintiff filed suit on February 28, 2012, alleging five counts: (1) discrimination based on his race; (2) hostile work environment also based on Plaintiff's race; (3) unlawful retaliation; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.  *See generally* Compl., ECF No. [1].  Defendants moved to dismiss portions of the Complaint.  After the parties briefed Defendants' motion, the Court granted Defendants' partial motion to dismiss, leaving only Plaintiff's Title VII discrimination claim based on the 2010 OIG investigation in Count I, and Count III as to retaliation under Title VII based on protected activity after 2007.  Mem. Op. (April 24, 2013), ECF No. [16], at 13.  Plaintiff subsequently filed an Amended Complaint and Defendants filed a second motion to dismiss.  The Court granted Plaintiff leave to file his Amended Complaint, but found that the revised allegations still failed to state a claim as to many of Plaintiff's counts.  Mem. Op. (June 20, 2013), ECF No. [30], at 13. The Court did,

---

[2] Although irrelevant to Plaintiff's claims which are based exclusively on the adverse effect of the *initiation* of the OIG investigation on Plaintiff's expected promotion, the Court notes, for the sake of completeness, that the OIG investigation found evidence that Plaintiff had submitted fraudulent time and attendance records.  Defs.' Stmt. ¶ 18.  OIG referred the investigation to IA for adjudication on October 12, 2010.  *Id.* ¶ 19.  In turn, IA submitted the case to United States Marshals Service Discipline Management on January 11, 2013.  *Id.*  On May 24, 2013, the United States Marshals Service deciding official "determined that the allegations against King were not sustained and issued a letter of closure."  *Id.* ¶ 20.

however, find that Plaintiff "stated a claim for racial discrimination based on Defendant Wyatt initiating an OIG investigation into the Plaintiff in 2010." *Id.* The Court also did not dismiss "Plaintiff's retaliation claim as it relates to the Plaintiff's protected activity in 2008" because Defendants did not challenge the adequacy of the allegations in support of this claim. *Id.* at 13-14. Defendants now move for summary judgment on these two remaining claims. As Plaintiff has filed an Opposition and Defendants have filed a Reply, Defendants' motion is now ripe for review.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.

*Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III.  DISCUSSION

Pursuant to Title VII, all personnel actions affecting employees of the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–16(a).  There are two essential elements of a discrimination claim: "that (i) plaintiff suffered an adverse employment action (ii) because of plaintiff's race . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  As for retaliation claims under

Title VII, a plaintiff must show "(1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

Plaintiff's discrimination and retaliation claims rest on the allegation that Wyatt took an adverse action—initiating the 2010 OIG investigation—because of Plaintiff's race and/or because of Plaintiff's 2008 EEO complaint against Wyatt.   As evidence of Wyatt's discriminatory bias, Plaintiff points to Wyatt's alleged discriminatory remarks in February 2008 and, as evidence of her retaliatory bias, Plaintiff points to the fact that Wyatt was the target of Plaintiff's 2008 EEO complaint.   Defendants challenge both the adverse employment action Plaintiff alleges he suffered and the evidence Plaintiff has presented that this action was motivated by discriminatory and/or retaliatory bias.

### A.  Adverse Employment Action

The Court finds, as it did in its prior opinion, that Plaintiff has alleged an adverse employment action by claiming that Defendants initiated the 2010 OIG investigation against him.  *See King v. Holder*, 950 F.Supp.2d 164, 171 (D.D.C. 2013).   Although, as Defendants argue, the "mere initiation" of an investigation may not constitute a materially adverse action, *see Ware v. Billington*, 344 F.Supp.2d 63, 76 (D.D.C. 2004), the parties agree that Plaintiff's career ladder promotion to GS-11 did not become effective in April 2010 because of the pending OIG investigation.   Accordingly, the initiation of the 2010 OIG investigation was an employment action that resulted in "materially adverse consequences affecting the terms, conditions, or privileges of [Plaintiff's] employment or [Plaintiff's] future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."  *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012).

**B. Evidence of Discrimination**

As for Defendants' challenge to Plaintiff's evidence of discrimination, Defendants argue that Plaintiff cannot show that the 2010 OIG investigation was initiated because of Plaintiff's race because the "record clearly shows that [ ] Wyatt did not initiate the 2010 OIG Investigation." Defs.' Mot. at 3. Instead, Defendants argue, the record reflects that "[t]he DOJ OIG independently opened the investigation after a separate [U.S. Marshals Service] Compliance Review of [District of Columbia Superior Court] time and attendance records, which suggested Plaintiff repeatedly submitted fraudulent overtime claims." *Id.* Defendants rely on a sworn declaration from Stanley E. Griscavage, Jr., Chief Inspector assigned to the United States Marshals Service Office of Inspection, Internal Affairs detailing the impetus for the 2010 OIG investigation. Griscavage Decl., ECF No. [43-4], ¶ 1.

Plaintiff contends to the contrary that the OIG investigation was "initiated by Tam Wyatt." Pl.'s Opp'n at 4. In support of this proposition, Plaintiff cites to the Report of Investigation, Synopsis, IA 09-0219.[3] The section of the Report upon which Plaintiff relies

---

[3] Since Plaintiff did not attach the Report of Investigation to his Amended Complaint or his Opposition, the Court ordered the parties to produce the Report. *See* Minute Order (Dec. 17, 2014). Plaintiff filed the Report of Investigation Synopsis on the public docket, *see* ECF No. [47], although the Court notes that the document was entered in error. Defendants submitted the entire Report of Investigation, including the Synopsis, directly to the Court in the form of a compact disc. Although Defendants submitted the entire Report of Investigation in addition to the Synopsis, as to the main issue before the Court—whether Wyatt was the impetus for the initiation of the 2010 OIG investigation—the body of the Report supports the language in the Synopsis on which Plaintiff relies. Accordingly, the Court did not find it necessary to provide Plaintiff an opportunity to respond to Defendants' submission. The Court has attached as an Exhibit to this Memorandum Opinion the pages on which it relies from the Report of Investigation. The Court is not attaching the entire Report of Investigation because it is over one thousand pages. The Court consulted with counsel for all parties in this matter who confirmed that the specific pages from the Report of Investigation on which the Court has relied could be placed as an Exhibit on the public docket. The Court has redacted personal identifying information, such as social security numbers, home addresses, and phone numbers, from these

states: "This OIG investigation was predicated on receipt of information from the United States Marshals Service (USMS) Office of Internal Investigations (OII) that Supervisory Deputy United States Marshal (SDUSM) Tam Wyatt alleged Deputy United States Marshal[] . . . Willard King submitted time and attendance (T&A) documents claiming unworked hours of overtime in the cellblock at Superior Court."  Report of Investigation, Mem. Op. Attachment 1, at 5 (Synopsis).

Having closely reviewed the Report of Investigation, the Griscavage Declaration, and the record as a whole, the Court finds that there is a genuine dispute of material fact as to whether Wyatt's allegations against Plaintiff were a proximate cause of the 2010 OIG investigation being opened.  Defendants contend that OIG opened the investigation into Plaintiff because IA referred to OIG evidence, discovered through a scheduled audit, that Plaintiff had requested overtime pay greatly exceeding other deputies.  Defs.' Mot. at 5; Defs.' Stmt. ¶ 15.  Defendants suggest that Wyatt's 2008 complaint was simply one document of many that OIG reviewed once it had opened the investigation.  Defs.' Mot. at 5; Defs.' Stmt. ¶ 17.  However, the Court finds that the record, specifically the Griscavage Declaration and the Report of Investigation, could be read by a reasonable juror to support Plaintiff's contention that the decision to open the 2010 OIG investigation was actually made *based* on Wyatt's 2008 complaint.

The Griscavage Declaration states that IA referred the investigation to OIG on April 13, 2009.  Griscavage Decl. ¶ 7.  The OIG case number given to that referral was 2009-4792.  Report of Investigation, at 1 (File Cover Sheet).  The OIG complaint forms associated with this case number affirm, as Defendants contend, that the referral received by OIG was based on the information discovered during the scheduled audit.  *See id.* ("During an investigation of overtime

---

pages.

hours billed in DC/SC, the overtime hours billed by DUSM Willard King were deemed to be potentially excessive . . ."); *id.* at 4 (Case Summary; Allegation) (same). After discussing the referral to OIG, the Griscavage Declaration explains that "[a]mong the documents reviewed by OIG was the March 6, 2008 complaint by SDUSM Wyatt regarding King." Griscavage Decl. ¶ 7. The Griscavage Declaration *then* states that "[t]he DOJ OIG investigation was initially opened on August 20, 2009 under OIG case number 2009-4792." *Id.* ¶ 8.

First, contrary to Defendants' argument in their briefing, the Griscavage Declaration does not state that Wyatt's 2008 complaint was only reviewed *as part of* the OIG investigation thus foreclosing the possibility that it was the impetus of the investigation. Indeed, the sequence of events proffered in the Declaration could be read to suggest that the OIG investigation was opened only *after* OIG reviewed Wyatt's 2008 complaint. Second, important information in the Declaration appears to be incorrect. According to the documents in the Report of Investigation, the investigation opened on August 20, 2009, was assigned OIG case number 2009-8466—not 2009-4792. It was the *April 2009* referral that was assigned case number 2009-4792. Report of Investigation, at 92. Thus, without more evidence, a reasonable juror could find it improper to impute the basis for case number 2009-4792—the evidence revealed through the scheduled audit—to the OIG investigation that was opened in August 2009 (case number 2009-8466). The Report of Investigation shows that the *August 2009* OIG investigation was the beginning of what eventually became the 2010 OIG investigation (assigned case number 2010-3034) that Plaintiff alleges was the adverse employment action taken against him. Specifically, the Report of Investigation explains that the 2010 OIG investigation "was originally opened as an investigative 'Initiative' on August 20, 2009 under OIG case number 2009-8466." *Id.* The 2010 OIG investigation was the "full criminal investigation" that arose out of the initial investigative

"initiative." *Id.*

Most importantly, the Report of Investigation specifically and exclusively lists as "[p]redicating material" for the August 2009 investigation (case number 2009-8466), Wyatt's March 2008 complaint. *Id.* at 53, 55-58. Furthermore, the Report of Investigation, which was prepared at the conclusion of the 2010 investigation and labeled with case number 2010-3034, states in the very first sentence of its "Synopsis:" "*This* OIG investigation was *predicated* on receipt of information from the United States Marshals Service (USMS) Office of Internal Investigations (OII) that Supervisory Deputy United States Marshal (SDUSM) *Tam Wyatt* alleged Deputy United States Marshal[] . . . Willard King submitted time and attendance (T&A) documents claiming unworked hours of overtime in the cellblock at Superior Court." *Id.* at 5 (emphasis added).

From this evidence, the Court finds that a reasonable juror could conclude that Wyatt's 2008 complaint was not simply a document reviewed in the course of OIG's investigation, but was a document that prompted the opening of the 2009 investigative "initiative" and the subsequent full-blown 2010 OIG investigation that arose out of that initiative. Although the independent audit—and not Wyatt's complaint—appears to have been what instigated IA's referral of the investigation to OIG and OIG's review of Wyatt's 2008 complaint, the record could be read to support a finding that OIG only decided to actually open an investigation in August 2009 and, later, in 2010, open a full criminal investigation, once it reviewed Wyatt's 2008 complaint. In *Staub v. Proctor Hospital*, 131 S.Ct. 1186 (2011), the Supreme Court held that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable . . . ." *Id.* at 1194. The exercise of

independent judgment by the ultimate decisionmaker "does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm.  Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that are too remote, purely contingent, or indirect.'"  *Id.* at 1192.  Here, although the evidence in the record is not entirely clear, the Report of Investigation on which Plaintiff relies could be read to support a finding that Wyatt's 2008 complaint was the proximate cause of the 2010 OIG investigation.  Since Plaintiff has alleged that Wyatt made discriminatory remarks, an allegation which Defendants have not refuted, a reasonable juror could find that Wyatt was motivated by discriminatory animus when she made the 2008 complaint and intended to cause an adverse employment action.  Accordingly, the Court finds that since a reasonable juror could infer from the record either that Wyatt's 2008 complaint was a proximate cause of the 2010 OIG investigation or that the investigation was initiated independent of Wyatt's complaint, this material question of causation is best left to a jury and Defendants' Motion for Summary Judgment on Plaintiff's discrimination claim shall be denied.

## C.  Evidence of Retaliation

Plaintiff's retaliation claim is less successful because even if Wyatt's 2008 complaint against Plaintiff was the proximate cause of the OIG investigation opened in 2010—several years after Plaintiff's protected activity—the fact remains that Wyatt made her complaint in March 2008, several months *before* Plaintiff's November 2008 protected activity.  As a result, no retaliatory motive could be assigned to Wyatt's 2008 complaint.  Plaintiff does not point to any evidence supporting or even suggesting that Wyatt made a new complaint after Plaintiff engaged in protected activity or that such a new complaint was the basis for opening the 2010 OIG

investigation.  Indeed, the Report of Investigation upon which Plaintiff relies specifically points to Wyatt's 2008 complaint as the "predicating information" for the August 2009 investigation and would most reasonably be understood as referring back to that complaint in the Synopsis of the 2010 investigation.  Based on the facts in the record and Plaintiff's allegations, the 2010 OIG investigation could only arguably be infected with retaliatory motive if the facts supported a finding that Wyatt's 2008 complaint had been made in retaliation for Plaintiff's protected activity.  Since Plaintiff's protected activity occurred after Wyatt made the 2008 complaint, it is implausible for the 2010 investigation to have been initiated in retaliation for Plaintiff's protected activity.  Accordingly, the Court shall grant Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's discrimination claim and GRANTED as to Plaintiff's retaliation claim.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE